**Roger SEFZIK and Jennifer Sefzik, Appellants**

v.

**MADY DEVELOPMENT, L.P. and MDC–Trinity Heights, L.P., Appellees.**

No. 05–06–00483–CV.

Court of Appeals of Texas, Dallas.

July 23, 2007.

---

James B. Harris and Steven Baggett, Thompson & Knight, L.L.P., Dallas, TX, for Appellant.

Rick L. Duncan and John Brusniak, Brusniak Blackwell, P.C., Dallas, for Appellee.

Before Justices MOSELEY, O'NEILL, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

Appellants Roger and Jennifer Sefzik appeal a summary judgment entered in favor of appellees Mady Development, L.P. and MDC–Trinity Heights, L.P. In five issues, appellants claim appellees were responsible for the additional taxes on the property; the trial court erred in failing to award appellants attorney's fees; appellants are entitled to a trial on their affirmative defense; and appellees are not entitled to recover on their subrogation claim. For the reasons stated below, we affirm the judgment in part, reverse and remand in part, and render judgment in part.

### BACKGROUND AND PROCEDURAL HISTORY

On January 29, 2002, Mady Development (Mady) and the Sefziks entered into an "Unimproved Property Commercial Contract" (contract) for the sale of 47.6 acres of real property located in Collin County, Texas, for $1,500,000. The land conveyed by the Sefziks to Mady under the contract consisted of land taxed under two property tax accounts identified in the parties' "Joint Stipulations of Fact" as the "110 tract" and the "130 tract." The Sefziks retained eleven acres of the 110 tract. When the contract was signed, the 110 tract and the 130 tract were receiving an agricultural exemption [1] from the Collin County Appraisal District (CCAD).

In May of 2002, the CCAD sent notices of appraised value to the Sefziks on the

---

1. See TEX. CONST. art. VIII, § 1–d–1.

110 and 130 tracts. The Sefziks appointed Charles McKissick, one of the real estate agents who brokered the sale, as their agent to protest the valuation. In June of 2002, the Sefziks, through their agent, reached a settlement with CCAD which reduced the market value of the 110 tract and the 130 tract. The agricultural exemption on the land was maintained.[2]

On September 9, 2002, the contract closed and the land was conveyed to Mady. At closing, the Sefziks paid $118.81 in prorated ad valorem taxes and Mady paid $53.27 in prorated ad valorem taxes. On that same day, Mady assigned the contract to MDC—Trinity Heights, L.P. (MDC).

In March of 2003, the CCAD issued a "Notice of Change of Use Determination" (notice) for the property to both the Sefziks and Mady. According to the notice, CCAD determined there was a change of use of the property as of December 31, 2002, and the property no longer qualified for the agricultural exemption for the 2002 tax year.

In September of 2003, the Collin County Tax Assessor sent out tax bills to Mady and the Sefziks for the 2002 tax year assessing taxes on the market value of the 110 tract and the 130 tract. The amounts assessed were $24,364.36 on the 110 tract and $6,629.23 on the 130 tract.[3] On December 16, 2003, Mady sent a demand letter to the Sefziks. Mady demanded the Sefziks pay a pro rata portion of the additional 2002 property taxes, which Mady calculated to be $17,379.09 [4].

Pursuant to the tax bills issued by the Collin County Tax Assessor, Mady paid $30,993.58 in property taxes for the 2002 tax year. The Collin County Tax Assessor subsequently refunded $5,030.80 to Mady for taxes paid on the Sefziks' eleven acres. On March 2, 2004, Mady sent another demand letter to the Sefziks regarding their pro-rata share of the 2002 property taxes. On April 15, 2004, Mady filed this lawsuit for breach of contract and reasonable attorney's fees. An amended petition filed on May 2, 2005 added a claim for equitable subrogation based on the amount that was paid by Mady on behalf of the Sefziks.

Both parties moved for summary judgment. Following a hearing on the cross-motions, the trial judge entered final judgment on January 6, 2006, allowing Mady to recover the $17,379.09 in property taxes and $1,086.84 for the subrogation claim together with post-judgment interest in the amount of five percent per annum from the date of judgment. The trial court also ordered the Sefziks to pay Mady's attorneys' fees. On February 8, 2006, the Sefziks filed a motion for new trial. The motion was denied in a written order dated March 24, 2006.

The Sefziks raise five issues in this appeal: (1) if there was a discontinuance of the agricultural exemption on the property resulting in market value taxes, then under the contract of sale, Mady was responsible for those additional taxes as a matter of law; (2) if the Sefziks are entitled to judgment as a matter of law, the trial court improperly failed to award them attorneys' fees and costs; (3) the Sefziks are entitled to a trial on their affirmative defense that Mady failed to mitigate damages; (4) having been refunded all of the

---

2. CCAD was not challenging the agricultural exemption, only the market value of the land.

3. Because the appraisal district had not split the parties' tax accounts after closing, Mady's tax bill for the 110 tract also included the

taxes on the eleven acres retained by the Sefziks.

4. Mady also requested the Sefziks pay $6,117.64 that Mady claims was assessed on the Sefziks' eleven acres.

market value payment made on the Sefziks' eleven acres, Mady is not entitled to recover $1,086.84 in subrogation; (5) as a matter of law, Mady was not entitled to recover under subrogation for any taxes it paid on the Sefziks' eleven acres.

### DISCUSSION

*Breach of Contract*

In their first issue, the Sefziks claim Mady was responsible as a matter of law for all of the taxes on the property that resulted from the revocation of the agricultural exemption because the real estate contract between the parties provided that the buyer was responsible for additional taxes caused by the buyer's change of use. Mady argues that the provision in the contract relied upon by the Sefziks is limited to rollback taxes and Mady is not looking to the Sefziks for reimbursement of any paid rollback taxes. Rather, Mady only seeks reimbursement from the Sefziks for their pro rata share of the taxes paid by Mady for the tax year 2002 and for taxes paid on those portions of the tract that were owned by the Sefziks and incorrectly included in the tax bill sent to Mady.

The standard for reviewing summary judgments is well established. We review a summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Dickey v. Club Corp. of Am.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). When, as in this case, both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *Dow Chem. Corp. v. Bright,* 89 S.W.3d 602, 605 (Tex.2002); *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *see also* Tex.R.App. P. 43.3.

Whether a contract is ambiguous is a question of law for the court. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex. 1996). However, when a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous and the court construes it as a matter of law. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Pratt–Shaw v. Pilgrim's Pride Corp.,* 122 S.W.3d 825, 829 (Tex.App.-Dallas 2003, no pet.). An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable. *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 861 (Tex.2000).

When interpreting a contract, the entire instrument, taken by its four corners, must be read and considered to determine the true intention of the parties. *Pratt–Shaw,* 122 S.W.3d at 829; *First Union Nat'l Bank v. Richmont Capital Partners,* 168 S.W.3d 917, 924 (Tex.App.-Dallas 2005, no pet.). We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows the parties used them in a technical or different sense. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996); *Pratt–Shaw,* 122 S.W.3d at 829. We must also examine the entire agreement in an effort to har-

monize and give effect to all provisions of the contract so that none will be meaningless. *Pratt–Shaw*, 122 S.W.3d at 829. We presume the parties to a contract intend every clause to have some effect. *Heritage Res., Inc.*, 939 S.W.2d at 121; *Pratt–Shaw*, 122 S.W.3d at 829. When interpreting an agreement, "[s]pecific and exact terms are given greater weight than general language." *Pratt–Shaw*, 122 S.W.3d at 829.

The provisions in the real estate contract concerning allocation of property taxes are as follows:

**13. PRORATIONS, ROLLBACK TAXES, RENT, AND DEPOSITS:**

A. *Prorations:*

\* \* \*

(2) If the amount of ad valorem taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year. If the taxes for the year in which the sale closes vary from the amount prorated at closing, the parties will adjust the prorations when the tax statements for the year in which the sale closes become available. This Paragraph 13A(2) survives closing.

\* \* \*

B. *Rollback taxes:*

(1) If Seller changes the use of the Property before closing or if a denial of a special valuation on the Property claimed by Seller results in the assessment of additional taxes, penalties, or interest (assessments) for periods before closing, the assessments will be the obligation of Seller. This Paragraph 13B(1) survives closing.

(2) If this sale or Buyer's use of the Property after closing results in additional assessments for periods before closing, the assessments will be the obli-gation of Buyer. This Paragraph 13B(2) survives closing.

The agreement also contains a merger clause, paragraph 22(c), stating, "This contract contains the entire agreement of the parties and may not be changed except by written agreement."

Neither party to this dispute argues that the provisions in the real estate contract relating to the allocation of property taxes are ambiguous, and both sides agree those provisions need to be evaluated within the "four corners" of the agreement. Although both parties agree the contract is unambiguous, they offer different interpretations of the agreement based on separate provisions. Mady argues that the 2002 property taxes should be prorated under paragraph 13A(2). The Sefziks claim that, because the additional property taxes resulted from Mady's use of the property, those additional taxes are the responsibility of Mady under paragraph 13B(2).

We agree with the parties that the contract is unambiguous. Despite the parties' conflicting interpretations, the provisions in question have certain and definite meanings and do not conflict. Because the contract is not ambiguous, its interpretation is, therefore, a question of law.

Mady places much emphasis on the fact that the term "Rollback Taxes" appears in the heading of paragraph 13B to support its argument that the provision is limited to a specific type of property tax—rollback taxes—and no other. Under Mady's interpretation, the paragraph 13B heading "Rollback taxes" is too narrow to include all of the additional taxes caused by the sale or by Mady's use of the property. Relying primarily on the Texas Tax Code and the Comptroller's Agricultural Appraisal Manual, Mady argues that the term "Rollback taxes" as found in paragraph 13B "is a term of art used in the industry" that applies only to rollback taxes imposed

on the property for the years 1997–2001, the payment of which is not in dispute, and not the taxes for 2002. *See* TEX. TAX CODE ANN. §§ 23.46(c), 23.55(a) (Vernon 2001); MANUAL FOR THE APPRAISAL OF AGRICULTURAL LAND at 31–33 (April 1990).

■ The Sefziks interpret paragraph 13 as placing the burden for the additional 2002 taxes on Mady because it was the party responsible for the change of use and thus the change in tax valuation. They claim the text of the agreement provides that the buyer, not the seller, is responsible for additional taxes caused by the buyer's change of use and that the additional taxes were imposed on the property because Mady, the buyer, changed the use of the property. Although the heading of paragraph 13B is titled "Rollback taxes," the text of the provision is broader than the heading and applies to "additional assessments" resulting from the sale or the buyer's use, not just "rollback taxes" as that phrase is interpreted by Mady.

■ We agree with the Sefziks' interpretation of the agreement. Courts turn to well-established rules of construction to resolve conflicts in contract provisions. Among those rules are: (1) specific provisions control over general provisions; (2) provisions stated earlier in an agreement are favored over subsequent provisions; and (3) the interpretation of an agreement should not render any material terms meaningless. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex.1994); *Coker*, 650 S.W.2d at 393; *Wells Fargo Bank Minn., N.A. v. North Cent. Plaza, L.L.P.*, 194 S.W.3d 723, 726 (Tex.App.-Dallas 2006, pet. denied).

Mady's position rests on the assumption that the term "rollback taxes" as used in the agreement has the same meaning as applied in the Tax Code[5] and the Comptroller's Agricultural Appraisal Manual.[6] There is, however, nothing in the agreement to suggest the parties intended to adopt the Comptroller's understanding. The use of the Tax Code or any other outside source to aid the interpretation of a real estate contract is unnecessary if, as in this case, the agreement is unambiguous and the parties give no indication in the agreement itself they intended to use such terms in a statutory or technical sense. Additionally, the presence of a merger clause in the agreement confirms that the agreement represents the entire understanding of the parties.

■ Furthermore, even if it were appropriate to look outside the agreement to interpret the term "rollback taxes," the text of the provision controls. Texas courts attach greater weight to the operative clauses of a contract than the captions or titles. *See Enter. Leasing Co. v. Barrios*, 156 S.W.3d 547, 549 (Tex.2004). In this case, the text of paragraph 13B(2) states that "additional assessments" resulting from the sale of or buyer's use of the property after closing, not just "rollback taxes" as that term is advanced by Mady,

---

5. The Sefziks argue that the phrase "rollback taxes" is not used anywhere in the body of the Tax Code. Although the phrase "rollback taxes" is not used, "rollback tax" is mentioned throughout the Tax Code. *See* TEX. TAX CODE ANN. §§ 26.04, 26.041, 26.043, 26.045, 26.05, 26.06, 26.07, 26.08, 313.029. Section 26.04 defines "[r]ollback tax rates." *Id.* § 26.04.

6. In the Comptroller's Agricultural Appraisal Manual, rollback taxes are defined as including taxes for the five years before the year in which the change in use occurs. *See* MANUAL FOR THE APPRAISAL OF AGRICULTURAL LAND at 33 (April 1990) (noting that the "rollback covers the five calendar years preceding the current year. If the use changes in 1989, the rollback covers 1988, 1987, 1986, 1985, and 1984.").

are the responsibility of the buyer. There was an "additional assessment" in that property taxes for the tax year 2002 greater than those prorated and initially paid by the parties were imposed on the property in 2003 because of the loss of the agricultural exemption on the property. Mady acknowledges that the additional taxes resulted from its use of the property, i.e., an intent to discontinue agricultural activities. Under the plain language of the agreement, Mady is therefore responsible for the 2002 market value taxes caused by the loss of the agricultural exemption.

Mady also argues that construing paragraph 13B to include the 2002 tax year renders paragraph 13A "almost entirely moot," thereby violating the principle that courts must give effect to all parts of the contract. However, interpreting paragraphs 13A and 13B as placing the burden for change-of-use taxes on the party changing the use is consistent with the general rules of contract construction. Paragraph 13B of the agreement allocates additional taxes for "periods before closing." Excluding year 2002 from the scope of paragraph 13B would eliminate January through September from the "periods before closing." Moreover, reading paragraphs 13A and 13B together, the only reasonable interpretation of these provisions is that the parties intended to prorate changes in taxes not caused by either the sale or the parties' use. Paragraph 13A(2) deals with additional taxes resulting from increases in taxable value caused by the taxing district's reappraisal or increases in a tax rate by a taxing entity, i.e., increases unrelated to the sale or the parties' use. On the other hand, paragraph 13B, which is the more specific of the two provisions, governs increases in property taxes resulting from certain actions solely within the control of the parties—the sale itself or the parties' use of the property. Because the increased property taxes were based on Mady's change of use of the property, Mady was solely responsible for the market value taxes imposed. Accordingly, the Sefziks' first issue is sustained. We reverse the portion of the trial court's judgment awarding Mady $17,379.09 for breach of contract and render judgment that Mady take nothing on its breach of contract claim.

*Subrogation*

▉ In their fourth issue, the Sefziks argue Mady is not entitled to recover $1,086.84 in subrogation for the Sefziks' eleven acres because Mady received all of the tax refund to which it was entitled. Mady argues there is no evidence supporting the Sefziks' claim that all of the taxes on their eleven acres have been refunded.

On appeal, the Sefziks argue that their share of the total tax bill was 20.6482 percent, a figure they arrive at by comparing the value assigned to their eleven acres, or $176,395, to the $852,555 total market value of the property on *which the market value tax bill was based.*[7] Multiplying the assessed tax of $24,364.30 by 20.6482 percent produces a figure of $5,030.79, which is the exact tax refund received by Mady. Having received a re-

---

7. The Sefziks base their argument on two documents in the clerk's record, a supplemental appraisal roll for the 110 tract and a screen print of the appraisal district's computer records. Mady argues that these documents were not stipulated to by either party and were not used by either party in their cross-motions for summary judgment, nor were they used in any replies to motions for summary judgment. They were also not addressed in the Sefziks' motion for new trial. Because we conclude, for reasons set forth above, that the Sefziks did not preserve their fourth or fifth issues for appellate review, we do not address Mady's contention that the documents in question are not properly part of the summary judgment record.

fund of all amounts paid, Mady is, therefore, according to the Sefziks, not entitled to any subrogation.

Mady claims the Sefziks failed to preserve this issue for appellate review. Mady argues the Sefziks raised the issue of a "calculation error" for the first time at the hearing on their motion for new trial. The "calculation error" discussed at the motion for new trial hearing, however, was not the same error the Sefziks are asserting on appeal. During the hearing, their attorney argued that, if one multiplied the total value of the property that Mady owned by the tax rate, the total tax bill for the property Mady owned was $26,176.09. Mady, however, only paid $25,962.78.[8] "If anything," the Sefziks' attorney told the trial judge, Mady owed his clients "213 bucks," and yet the trial judge ordered them to pay Mady "$1,000 when they've already not—when they have never paid more than what they were required to pay on what they own." In response, Mady's counsel said he could not address this argument because he was hearing it for the first time and it was not raised in either the Sefziks' motion for summary judgment or their motion for new trial. The trial court concluded that, since the Sefziks did not raise the issue in their motion for new trial, the court could not address the issue.

▇▇▇▇ To preserve a complaint for appeal, the *record* must show that the complaint was made to the trial court by a timely request, objection, or motion and that the trial court ruled on the request, objection, or motion either expressly or implicitly or that the trial court refused to rule and the party objected to the court's refusal. Tex.R.App. P. 33.1(a). The complaint raised on appeal must be the same as the complaint presented to the trial court. *See In the Interest of E.A.C.*, 162 S.W.3d 438, 445 (Tex.App.-Dallas 2005, no pet.); *see also Rich v. Mulupuri*, 205 S.W.3d 1, 4 (Tex.App.-Dallas 2006, pet. denied). A party may not enlarge a ground of error on appeal to include an objection not asserted at trial. *In the Interest of E.A.C.*, 162 S.W.3d at 445; *Pfeffer v. S. Tex. Laborers' Pension Trust Fund*, 679 S.W.2d 691, 693 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.).

The Sefziks concede in their reply brief that "the exact explanation presented by the Sefziks in this appeal for why Mady is not owed a refund on the Sefziks' 11 acres was not discussed in the trial court," but they claim they preserved the issue regarding "the amount of the subrogation" when, in response to Mady's second motion for summary judgment, they argued, "The Mady Parties cannot prove that the Sefziks were liable for either the $6,117.64 in taxes that they originally claimed were due or the $1,086.94 in taxes to which their claim has now been reduced."

The specific argument presented by the Sefziks in their response to Mady's second motion for summary judgment was that they were not liable for the taxes Mady claimed to have paid because the amount demanded by Mady, $1,086.84, would have amounted to a fifty percent tax rate on the eleven acres' $2,014 value and the actual tax rate for 2002 was 2.88 percent. Applying that rate, the taxes on the Sefziks' eleven acres would have been fifty-eight dollars, and the Sefziks had already paid $68.52 to Mady. In their motion for new trial, they argued:

> The Mady Parties have no basis for their subrogation claim. Rather than seek additional refunds of the amounts

---

8. As he explained during the hearing, the Sefziks' attorney arrived at this figure by subtracting the money paid to Collin County in 2002 taxes, $30,993.58, from the $5,030.80 subsequently refunded to Mady for taxes paid on the Sefziks' eleven acres.

they should never have paid to the tax district, the Mady Parties simply ask the Sefziks to pay for the Mady Parties' mistake under the guise of subrogation. In fact no one was liable for the taxes the Mady Parties paid on the Sefziks' land. The Mady Parties should be forced to seek a refund from the tax district not the Sefziks.

There is no mention in either document of the calculation error asserted in the Sefziks' appellate brief nor any reference to the documents on which it is based. Since the issue was not raised at the trial level nor was it addressed in the motion for new trial, it has not been preserved for appellate review. The Sefziks' fourth issue is overruled.

In their fifth issue, the Sefziks argue that, as a matter of law, Mady was not entitled to recover under subrogation for any taxes paid on the Sefziks' eleven acres. Under this issue, the Sefziks raise two specific arguments: (1) the Sefziks convinced the appraisal district that the agricultural exemption should not be revoked on their eleven acres for 2002, and, thus, they were not liable at all, let alone primarily liable, for the additional market value-based taxes paid by Mady;[9] (2) Mady paid those taxes voluntarily by failing to take advantage of the procedure set forth in Tex. Tax.Code Ann. § 25.25(b), which authorized the chief appraiser of the taxing district to correct the appraisal roll and show the Sefziks as the true owners of the eleven acres.

██ Neither of these arguments were raised in the Sefziks' response to Mady's

motion for summary judgment or in the motion for new trial. As we mentioned before, if an issue is not raised at the trial court level, it will not be addressed on appeal. *See, e.g., In the Interest of E.A.C.* 162 S.W.3d at 445. Having failed to preserve their issue for review, we overrule the Sefziks' fifth issue.

*Attorney's Fees*

We now turn to the question of attorney's fees. In their second issue, the Sefziks claim that, if they are entitled to judgment as a matter of law, the district court improperly refused to award them attorney's fees and costs. Paragraph 16 of the contract states that the "prevailing party" in any legal proceeding brought under the real estate contract or the transaction between the parties is entitled to recover all costs of the proceeding and reasonable attorney's fees:

> **ATTORNEY'S FEES:** If Buyer, Seller, any broker, or any escrow agent is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This paragraph 16 survives closing.

Citing this provision, the Sefziks argue they are entitled, as a matter of law, to attorney's fees and costs for defending this lawsuit because they are the "prevailing party" in a legal proceeding brought under the contract.[10]

██ The general rule is that a prevailing party cannot recover attorney's fees

9. The basis for this assertion is found in Roger Sefziks' summary judgment affidavit, in which he attests that, during March of 2003, he received the notice of change of use from the CCAD. He claims he responded to the notice as it pertained to his eleven acres in the 110 tract "and succeeded in having the

agricultural exemption reinstated for 2002 and beyond."

10. In their motion for summary judgment, the Sefziks provided evidence their reasonable and necessary attorney's fees and costs were $45,074.36 in the trial court, which included $44,000 in attorney's fees and $1,074.36 in costs, with an additional $15,000 for an ap-

from an opposing party unless permitted by statute or by contract between the parties. *Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 95 (Tex.1999); *Travelers Indem. Co. v. Mayfield,* 923 S.W.2d 590, 593 (Tex.1996). As explained previously in this opinion, our disposition of the Sefziks' first issue substantially reduces, but does not entirely eliminate, the amount of Mady's recovery. The question remains whether Mady is a "prevailing party" under paragraph 16 and would therefore be entitled to reasonable attorney's fees for its subrogation claim. If Mady is not a "prevailing party," only the Sefziks are entitled to attorney's fees and costs. Because these questions were not addressed in the trial court, we reverse the trial court's award of attorney's fees and remand for reconsideration of attorney's fees in light of this opinion.

*Conclusion*

Having therefore sustained the Sefziks' first issue and having concluded that the taxes Mady sought to prorate were, as a matter of law, solely the responsibility of Mady, we reverse the portion of the trial court's judgment awarding Mady $17,379.09 and render judgment in favor of the Sefziks. We also reverse the trial court's award of attorney's fees for Mady and remand the issue of attorney's fees to the trial court. As a result of our disposition of the Sefziks' first issue, it is unnecessary to address their third issue concerning the affirmative defense of failure to mitigate. The remainder of the trial court's judgment awarding Mady $1,086.84 for subrogation is affirmed.

peal to this Court and $10,000 for any further appeal to the Texas Supreme Court. Mady

did not controvert any of this evidence.