COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-278-CV

 

 

CENTERPOINT APARTMENTS                                                APPELLANT

 

                                                   V.

 

JEFFREY L. WEBB                                                                  APPELLEE

 

                                              ------------

 

          FROM COUNTY
COURT AT LAW NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. Introduction








To paraphrase the Bard, ATo be [a
lease renewal], or not to be [a lease renewal]. 
That is the question.@[2]  In one issue, Appellant Centerpoint
Apartments (Centerpoint) appeals the trial court=s take
nothing judgment in favor of Appellee Jeffrey L. Webb.  At risk are damages of $1,186.67, plus
attorney=s fees
of several times that amount.  We affirm.

II. Factual and Procedural History

On April 29, 2004, Dale Arms executed a Texas
Apartment Association (TAA) Member form agreement with Centerpoint entitled AApartment
Lease Contract@ (Lease 1).  Lease 1=s term
began on May 1, 2004, ended November 30, 2004, required thirty days= written
notice of termination or intent to move out to prevent automatic month-to-month
renewal, and provided for $545 monthly rent and prorated rent of $425 for the
first month, among other provisions.  On
May 1, 2004, Dale Arms=s older brother, Webb, entered a
lease guaranty contract (Guaranty Contract) with Centerpoint, the terms of
which are at issue here.








On September 29, 2004, Centerpoint entered into a
second TAA form agreement with Arms, also entitled AApartment
Lease Contract@ (Lease 2), which was set to
begin on December 1, 2004, the day after the expiration of Lease 1, and to end
on June 30, 2005.  Paragraph 3 of Lease 2
provided that it would automatically renew month-to-month unless either party
gave at least sixty days= written notice.  It also provided that there was no prorated
rent amount, but it included an AAddendum
for Rental Concessions,@ (Addendum) dated September 29,
2004.[3]

Arms fulfilled his contractual obligations under
Lease 1; however, he breached Lease 2. 
Centerpoint filed suit in the justice court against Webb for breach of
the Guaranty Contract and prevailed. 
Webb appealed to the county court.

During the bench trial, the county court heard
testimony and argument and reviewed evidence regarding whether Lease 2 was a
new lease contract or a renewal of Lease 1. 
The trial court admitted Centerpoint=s
exhibits, including the Guaranty Contract, Lease 2, and the Addendum.  It also admitted Webb=s
exhibits, including the TAA form Lease Contract Guaranty and Lease 1. 








Kendra Heintzelman, Centerpoint=s
assistant property supervisor, testified that the Guaranty Contract Awill
guarantee renewals, original contract renewals, roommate additions, deletions,
modifications, apartment number changes.@  She also testified that Centerpoint had
modified TAA=s Lease Contract Guaranty form,
which was admitted into evidence to compare to the Guaranty Contract,
particularly the A[v]erbiage regarding renewals,
amendments, modifications, unit number changes.@  She 
testified that Centerpoint did not use a TAA renewal lease form, that
the guarantor=s obligation terminates when the
apartment is vacated, and that the guarantor=s rights
were in the lease contract.  She
testified that she believed that Lease 2 was a renewal.  Webb testified that he understood the
Guaranty Contract to be only for a six month period.

At the trial=s conclusion,
the trial court held that Webb was not subject to liability under the Guaranty
Contract, stating,

The document that the apartment
commission has chosen to use is a document entitled Apartment Lease
Contract.  It does not, in any way,
indicate that it is a renewal.  That the
apartment complex chooses to use that as its vehicle for continuation of
occupancy by tenants in this action does not change it into a renewal
contract.  It is not labeled as such. . .
. And the Court is going to strictly construe the language of the documents
that these parties have signed. 
Therefore, I do not find that the Lease Contract Guaranty, . . . extends
to the subsequent document, . . . says date of Lease Contract, 9/24/04, with the
starting date being December 1, 2004.  So
the judgment is for the Defendant in this action. 

 

This appeal followed.  

 

 








III. Analysis 

In its sole issue, Centerpoint argues that the
trial court erred by rendering judgment in favor of Webb, claiming that it
established as a matter of law that Webb breached the Guaranty Contract.  Specifically, Centerpoint claims that the
Guaranty Contract=s express terms extended Webb=s
liability to include a breach of a lease renewal or any leases signed by Webb=s
brother, that the lease contract title was not dispositive of an intent to
renew or to discontinue Webb=s
guarantor liability, and that Centerpoint established at trial all of the
elements of a breach of guaranty claim.

A.  Standard of Review

We review de novo a trial court=s
conclusions of law with regard to contract interpretation.  See MCI Telecomm. Corp. v. Tex.
Utils.  Elec. Co., 995 S.W.2d 647,
650_51(Tex. 1999); Huntley
v. Enon Ltd. P=ship, 197
S.W.3d 844, 849 (Tex. App.CFort
Worth 2006, no pet.).  We
accord no deference to the lower court=s
decision.  Quick v. City of Austin,
7 S.W.3d 109, 116 (Tex. 1998). 

B. Contract Interpretation 








When interpreting a contract, no single provision
taken alone will be given controlling effect; rather, all the provisions must
be considered with reference to the whole instrument.  Citizens Nat=l Bank
in Abilene v. Tex. & Pac. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003,
1006, cert. denied, 314 U.S. 656 (1941).  If an instrument is
written so that it can be given a definite legal meaning or interpretation, the
court should construe it as a matter of law. 
Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Pham v.
Mongiello, 58 S.W.3d 284, 288 (Tex. App.CAustin
2001, pet. denied).  To achieve this
objective, the court should examine and consider the entire writing in an
effort to harmonize and give effect to all the provisions of the contract so
that none will be rendered meaningless.  Universal
C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 158 (1951). 

The fact that the parties to a contract disagree
over the interpretation of the contract does not necessarily render it
ambiguous.  Pham, 58 S.W.3d at
288.  Likewise, uncertainty or a lack of
clarity in the language used in the contract does not automatically render it
ambiguous.  Id.  And an ambiguity does not arise simply
because the parties advance conflicting interpretations; rather, for an
ambiguity to exist, both interpretations must be reasonable.  Lopez v. Munoz, Hockema & Reed, L.L.P.,
22 S.W.3d 857, 861 (Tex. 2000); Sefzik v. Mady Dev., L.P., 231 S.W.3d
456, 460 (Tex. App.CDallas 2007, no pet.). 

1. Guaranty Contract Terms

The Guaranty Contract provides in pertinent part
as follows:








Lease Contract
Information . . . 

ABOUT LEASE: Date of
Lease Contract . . . 4/29/04 . . .

Monthly rent for dwelling
unit $545 . . . 

Beginning date of Lease
Contract: 5/1/04 . . . 

Ending date of Lease
Contract: 11/30/04[.] 

 

. . . 

 

You, as guarantor signing
this Lease Contract Guaranty, guarantee all obligations of resident(s) under
the above Lease Contract, including but not limited to rent, late fees,
property damage, repair costs, animal violation charges, reletting charges,
utility payments and all other sums which may become due under the Lease
Contract.  You agree that your
obligations as guarantor will continue and will not be affected by amendments,
modifications, roommate changes or deletions, unit # changes, renewals or any
lease agreements which may be agreed to from time to time between any of the
residents and us (including month to month renewal in P.#3 of lease.)  Guarantor is responsible for any holdovers,
(paragraph #32 of lease.)  If guarantor
gives notice to move out, (P.#3 and #37 of lease) and resident renews lease or
signs a new lease, guarantor=s notice will be considered void.

 

. . . 

 

Guarantor unconditionally understands that the
guarantor form allows the resident the right to renew his or her lease
at any time he or she desires without approval from guarantor or notification
by apartment management to guarantor of such renewal.  Guarantor is responsible for any renewals
signed by resident.

2. Lease Title and Terms








Centerpoint argues that, contrary to the trial
court=s
interpretation, Lease 2=s title, AApartment
Lease Contract,@ was not dispositive of the
parties= intent
to renew Lease 1 or to continue Webb=s
liability.  However, while title alone
may not be dispositive, we may consider it in interpreting the parties=
intentions.  Cf. Sefzik, 231
S.W.3d at 462 (ATexas courts attach greater
weight to the operative clauses of a contract than the captions or titles.@); see
also Enter. Leasing Co. v. Barrios, 156 S.W.3d 547, 549 (Tex. 2004)
(recognizing that in certain cases, courts may consider the title of a contract
provision or section to interpret a contract, although greater weight should be
given to the contract=s operative clauses). 

On its face, Lease 2 does not appear to be a
renewal or extension of Lease 1.  Lease 2
is not titled a Arenewal@ or Aextension@;
rather, it is titled, AApartment Lease Contract,@ and
purports to set out a new agreement by stating, A[T]he
initial term of the Lease Contract begins on the 1 day of December,
2004 . . . .@ 
If Centerpoint had intended for Lease 2 to be a renewal of Lease 1, it
could have easily labeled it as such or otherwise indicated it somewhere on the
contract itself.  Heintzelman testified
that the majority of Centerpoint=s forms
were TAA and that Centerpoint had modified the TAA Lease Guaranty Contract Ato make
the Guaranty what they wanted it to be.@  She provided no testimony with regard to why
Centerpoint could not have labeled any subsequent apartment lease contract a Arenewal
contract@ to fit
the language that she testified Centerpoint had added to TAA=s Lease
Guaranty Contract to create the Guaranty Contract.








Furthermore, the Guaranty Contract specifically
references Paragraph 3, which provides for automatic renewal, in its list of
continuing obligations, stating:  

You agree that your obligations as guarantor will
continue and will not be affected by amendments, modifications, roommate
changes or deletions, unit # changes, renewals or any lease agreements which
may be agreed to from time to time between any of the residents and us (including
month to month renewal in P. #3 of lease.) 
[Emphasis added.]

Paragraph 3 in Lease 1 sets out the initial term
of the lease and provides, AThis
Lease Contract will automatically renew month-to-month unless either
party gives at least 30 days written notice of termination or intent to
move-out as required by paragraph 37.@  [Emphasis added.] Paragraph 3 in Lease 2
requires sixty days= written notice to prevent
automatic renewal.  Both contracts state
under Paragraph 10(5), AMonth to month renewal in
paragraph #3 continues indefinitely for cosigners, residents and
guarantors until written notice of intent to vacate is given as required by
paragraph #37.@ [Emphasis added.]








Nothing in either lease provides for any sort of
renewal other than the month-to-month renewal referred to in Paragraph 3.  Under the plain terms of either lease,
renewal is automatic; therefore, if Arms had not signed Lease 2, Lease 1
would have automatically renewed and Webb=s
liability would have continued.  Instead,
Centerpoint and Arms signed Lease 2, which included a different termination
term to prevent automatic renewal and different monthly rent in the Addendum.  To treat Lease 2 as a renewal would require
us to ignore Paragraph 3, which we may not do. 
See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132,
133 (Tex. 1994) (A[E]ach
part of the contract should be given effect.@).  Therefore, we conclude that Lease 2 was a new
lease, and not a renewal.

Centerpoint also contends that the Guaranty
Contract language, Aany lease agreements which may
be agreed to from time to time,@ makes a
specific reference to future transactions and should necessarily extend Webb=s
liability to Lease 2.  Webb counters that
the Aany
lease agreements@ language in the Guaranty
Contract only refers to Lease 1 because the preceding terms in the sentence
only reference changes to Lease 1, not new leases.  The controversial provision reads as follows:

You agree that your obligations as guarantor will
continue and will not be affected by amendments, modifications, roommate
changes or deletions, unit # changes, renewals or any lease agreements which
may be agreed to from time to time between any of the residents and us
(including month to month renewal in P. #3 of lease.)  Guarantor is responsible for any holdovers,
(paragraph #32 of lease.)  If guarantor
gives notice to move out, (P.#3 and #37 of lease) and resident renews lease or
signs a new lease, guarantor=s notice
will be considered void.  [Emphasis
added.]








The Guaranty Contract=s
language contemplates that Centerpoint and Arms might renew, modify, or make
changes to Lease 1 during Lease 1=s term
without voiding the Guaranty Contract, demonstrated by the section entitled ALease
Contract Information,@ with its specific beginning and
ending dates, as well as the language stating that the guarantor guarantees all
obligations Aunder the above Lease Contract,@ and the
language providing for renewals and other changes under Lease 1.

However,
we have been unable to find language in the Guaranty Contract that, as a matter
of law, would extend Webb=s liability as a
guarantor beyond Lease 1 to new leases between Arms and Centerpoint without
Webb giving Anotice to move out.@  Under that one circumstance, if the resident
then Arenews lease or
signs a new lease, guarantor=s notice will be considered void.@ [Emphasis added.][4]  Had Centerpoint wanted to expressly include new leases in
the Guaranty Contract under any other circumstance, it could have added the
word Anew@ to the clause listing every other
type of change to Lease 1: amendments, modifications, roommate changes, unit
number changes, renewals, or holdovers.[5]


 








Therefore, we disagree with Centerpoint=s
contention that the Aany lease agreements@
language included or contemplated any future contracts between Arms and
Centerpoint.  If we were to follow this
reasoning, then Lease 1>s ending date, which was
included in the Guaranty Contract, would be a term rendered meaningless.  See Forbau, 876 S.W.2d at
133.  The words Anew
lease@ are not
used anywhere in the Aany lease agreements@
sentence and the preceding items in that sentence all refer to changes to Lease
1.  Additionally, the Guaranty
Contract makes multiple references to the ALease Contract@ that is being
guaranteed, with a capital L and a capital C; Lease 1 is titled AApartment Lease
Contract,@ as is Lease 2.  However, the sections in the Guaranty
Contract that clarify obligations under Lease 1, including the Aany lease
agreements@ section, refer to the lease with a lower
case Al@Ca clear
distinction between the specific ALease Contract@ and any general
agreements  that might take place under
that Lease Contract.  See id. at
133_34 (reciting the
general contract construction rule that the more specific provision will govern
the general).   








We interpret the Aany
lease agreements@ language to simply extend Webb=s
liability to any lease changes along the lines of amendments or modifications
that might occur Afrom time to time@ under
Lease 1.  Cf. Blount v. Westinghouse
Credit Corp., 432 S.W.2d 549, 552_53 (Tex. Civ. App.CDallas
1968, no writ) (stating that language regarding Aagreements 

. . . in force or hereafter made@ clearly
comprehended guarantor=s intent to guarantee obligor=s
present and future indebtedness in obligor=s usual
course of business (emphasis added)). 
Accordingly, we hold that Webb was not liable, as a matter of law, as
guarantor under Lease 2.  We overrule
Centerpoint=s sole issue.[6]

IV. 
Conclusion

Having overruled Centerpoint=s sole
issue, we affirm the trial court=s
judgment.

PER
CURIAM

 

PANEL:  MCCOY, HOLMAN, and GARDNER, JJ.

 

DELIVERED: August 28,
2008











[1]See Tex. R. App. P. 47.4.





[2]William
Shakespeare, Hamlet act 3, sc. 1.





[3]The Addendum provided as
follows:

 

Addendum to lease
contract dated 9-24-04 between Dale Arms and Centerpoint
Apartments[.] Rent from 12/1/04 to 6-30-05 will be $399.00
per month until 6-30-05.  The
total concession that you will be receiving is $1,022.00. . . . When
this lease term ends, rent will automatically go to the current street
rate.  At that time, please contact the
office to find out what the street rate is or if we are offering any discounts
at that time. 

 

The underlined portions
here and throughout this opinion represent the lines that were completed by
hand.





[4]Nothing was produced at trial to
show that this exception would apply.





[5]Lease 1 and Lease 2 both
provide for extension of the lease contract term for holdovers, under Paragraph
32. 





[6]Because this is
dispositive of Centerpoint=s breach of guaranty claim, we need not address
that portion of Centerpoint=s sole issue. 
See Tex. R. App. P. 47.1.