Jerutha PRATT–SHAW, as Personal Representative of the Heirs and Estate of Charles Pratt, Deceased, Valarie Jackson, Mary Coleman, Frederick Newman, Lula Mae Newman, Louvenia Medlock, Harvey Newman, and Ernest Newman, Appellants,

v.

PILGRIM'S PRIDE CORPORATION, Appellee.

No. 05–02–01611–CV.

Court of Appeals of Texas, Dallas.

Nov. 4, 2003.

Rehearing Overruled Jan. 9, 2004.

David R. Weiner, Glast, Phillips & Murray, Joseph Bruegger, Bruegger & McCullough, P.C., Dallas, for Appellant.

Mark D. Taylor, Clayton E. Bailey, Baker & McKenzie, Dallas, for Appellee.

Before Justices JAMES, FRANCIS, and LANG.

### OPINION NUNC PRO TUNC

Opinion by Justice LANG.

On the Court's own motion, we issue this nunc pro tunc opinion to correct clerical errors in our October 31, 2003 opinion. The following is the new opinion of the court.

JERUTHA PRATT SHAW, as Personal Representative of the Heirs and Estate of CHARLES PRATT, Deceased, VALARIE JACKSON, MARY COLEMAN, FREDERICK NEWMAN, LULA MAE NEWMAN, LOUVENIA MEDLOCK, HARVEY NEWMAN, and ERNEST NEWMAN, appellants, bring this appeal from the trial court's order granting the motion of PILGRIM'S PRIDE CORPORATION, appellee, for Summary Judgment and dismissal with prejudice of appellants' suit for personal injuries suffered by the deceased while working on appellee's premises.

In three issues on appeal, appellants claim that the grant of the motion for summary judgment was improper because: (1) a waiver and release in an agreement signed by the decedent did not extend to a negligence claim against appellee because appellee was not a third-party beneficiary of that agreement; (2) appellee was not a third-party beneficiary of the agreement signed by the decedent, therefore appellee was not entitled to summary judgment on the grounds of ratification, the doctrine of quasi-estoppel and acceptance of benefits, or the doctrine of election of remedies; and (3) there was a genuine issue of material fact as to whether the decedent was required to sign a new plan agreement annually in order for the waiver and release to continue in effect. For the reasons that follow, we resolve appellants' issues adversely to them. Accordingly, we affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

Charles Pratt, Jr., was an employee of B & C Concrete, Inc. B & C was a small concrete pouring and finishing company. Pratt died August 3, 2000, as a result of injuries he received after falling into a pit of toxic chemicals while he was working for B & C on appellee's premises in Dallas.

At the time of Pratt's death, B & C did not have workers' compensation insurance. As a nonsubscribing employer, B & C offered its employees voluntary participation in an Occupational Accident Employee Welfare Benefit Plan ("the Plan"). After his death, Pratt's medical expenses and an accidental death benefit were paid in accordance with the Plan's terms.

Appellants brought suit against appellee and others for Pratt's injuries. Appellee argued that appellants' action was barred by the waiver and release language in the agreement to participate in the Plan which was signed by Pratt before his death ("the Agreement"). This Agreement was signed March 4, 1999.[1]

The Agreement discloses to the employee that the employer does not have workers' compensation insurance, that, as a result, he may have certain common law rights, and that the employer offers the benefits of the Plan instead of the common law rights. The Agreement refers to the Summary Plan Description which generally describes the Plan benefits and indicates that the Plan is governed by ERISA (Employee Retirement Income Security Act of 1974). The Summary states that in order to obtain a complete description of benefits, the Plan Document and Adoption Agreement should be consulted.

The specific premise espoused by appellee in support of its motion for summary judgment is that when Charles Pratt signed the Agreement, he waived all common law claims against the persons identified, i.e. "the Company, its successors, assigns, employees, officers, directors, shareholders, agents and clients." Appellee, Pilgrim's Pride, claims it is a "client" and because of that status, any claims against it are waived. Also, appellee claimed it was entitled to summary judgment on the grounds of ratification, the doctrine of quasi-estoppel and acceptance of benefits, and the doctrine of election of remedies. The trial court granted summary judgment in favor of appellee without specifying the grounds.

## STANDARD OF REVIEW

██ The standards for reviewing a summary judgment are well established. The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ.P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548

---

1. Portions of the Agreement which are pertinent to this discussion are set forth below:

 As a result of the Company not having workers' compensation insurance coverage, you may have certain rights under the common laws of Texas for damages arising out of work-related illness or injury. If, however, you choose to participate in the Company's Occupational Accident Employee Welfare Benefit Plan by requesting the benefits provided by the Plan, you hereby agree to accept the Plan benefits as the only benefits you are entitled to receive in the event of a work-related injury and to waive any and all other causes of action, claims, rights, and demands that you could make against the Company, its successors, assigns, employees, officers, directors, shareholders, agents and clients.

 Further, by executing this agreement, and in consideration of your participation in the Company's Occupational Accident Employee Welfare Benefit Plan, you hereby agree that all funds received by you under the terms of this Plan will inure to or be to the advantage of and for the benefit of the Company in the event of litigation. If a third party may be liable for an injury to you in your status as an employee of the Company and you may have rights of recovery for damages, by your execution of this Agreement, you do hereby agree to execute an assignment of rights document for the purpose of allowing the Company to recover any payments it may have made to you or on your behalf in connection with the injury.

(Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true and every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.* A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979). Where the summary judgment does not state the grounds upon which it was granted, appellants must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *See Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 394 (Tex.App.-Dallas 1998, no pet.).

### APPLICABLE LAW

■ To resolve the issues in this appeal, we must interpret the waiver provision contained in the Agreement signed by the decedent. Appellants do not claim the Agreement is ambiguous. It is a basic premise of contract interpretation that unambiguous contracts are construed as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). "The entire instrument, taken by its four corners, must be read and considered to determine the true intention of the parties." *Dedier v. Grossman*, 454 S.W.2d 231, 234 (Tex.Civ.App.-Dallas 1970, writ ref'd n.r.e.); *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 132 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd.). We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996).

■ When interpreting a contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999). We presume that the parties to a contract intend every clause to have some effect. *Heritage Res., Inc.*, 939 S.W.2d at 121. A release for future conduct need not identify the tortfeasor with particularity to extend to him. *Smith v. Holley*, 827 S.W.2d 433, 441 (Tex.App.-San Antonio 1992, writ denied). When interpreting a promise or agreement, "[s]pecific and exact terms are given greater weight than general language." *Silver Spur Addition Homeowners v. Clarksville Seniors Apartments*, 848 S.W.2d 772, 775 (Tex.App.-Texarkana 1993, writ denied)(citing RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 203(c) (1981)).

### WAIVER AND RELEASE

In their first issue, appellants argue that summary judgment on the basis of waiver and release is improper because appellee is not a third-party beneficiary of the Agreement containing the waiver and release. They assert that to construe the Agreement to apply to appellee would frustrate the subrogation and assignment provisions of the Agreement.

#### A) Third—Party Beneficiary

Appellants cite *MCI Telecommunications Corp. v. Texas Utilities Electric Co.*, for the propositions that: (1) there is a presumption against third-party beneficiary agreements; (2) a third party may recover on a contract only if the contracting parties entered into the contract directly for the third party's benefit; and (3) "[i]n determining whether a third party can enforce a contract, the intention of the contracting parties is controlling." *Id.* at 651.

In *MCI*, TU sought to recover attorney's fees for the breach of a contract between MCI and Missouri Pacific Railroad. TU's predecessor had built an electric transmission line along a right of way in accordance with a license agreement with MoPac's predecessor. Twelve years later MoPac granted MCI the right to construct its fiber optic system along the same right of way. The contract between MoPac and MCI provided that MCI would "secure such permission as may be necessary on account of any other existing rights in any third party (including, without limitation, rights of . . . licensees . . .) . . . . MCI hereby agrees to exercise the herein granted rights in such a manner as not to interfere in any way with any existing prior rights." *Id.* at 649. TU's poles were damaged by MCI's actions in laying its cable. TU sued MCI for negligence and breach of contract, and sought to recover its attorney's fees on the breach of contract claim. TU claimed it was a third-party beneficiary of the contract as a prior licensee. However, the contract explicitly provided in section 26(c) that "neither this Agreement, nor any term or provision hereof, nor any inclusion by reference, shall be construed as being for the benefit of any party not in signatory hereto." *Id.* at 649–50. "[S]ection 26(c) explicitly states that the contract is not to be interpreted as conferring any benefits on nonsignatory parties. This section reflects the intention of the parties that there be no third-party beneficiaries to the contract." *Id.* at 652. Thus, the court concluded that TU was not a third-party beneficiary of the contract between MoPac and MCI granting MCI a right of way.

In contrast, appellee cites cases in which a third party was held to be a third-party beneficiary of a waiver and release. *Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724, 730 (Tex. App.-Dallas 1992, writ denied); *Derr Constr. Co. v. City of Houston*, 846 S.W.2d 854, 860 (Tex.App.-Houston [14th Dist.] 1992, no writ). In *Temple EasTex, Inc.*, this Court concluded that a waiver contained in the contract between the owner and general contractor included a third-party subcontractor within the meaning of the term "Sub-contractors, Sub-subcontractors." "The language, '*The Owner and Contractor waive all rights against each other and the Sub-contractors, Sub-subcontractors, agents and employees each of the other* . . .' . . . reveals Old Orchard's and Greener & Sumner's intent that the waiver provision extend to subcontractors." *Id.* at 730. Similarly, in *Derr Construction Co.*, the court held that the city of Houston and its construction administrator were included within the meaning of a release contained in the contract between the general contractor and subcontractor which released "the City" and the "Construction Administrator" from all claims, demands, and causes of action of every kind and character. *Derr Constr. Co.*, 846 S.W.2d at 861. Accordingly, the court upheld the trial court's entry of summary judgment in favor of the city of Houston and its construction administrator.

The waiver in the Agreement signed by the decedent, which we must construe, explicitly states that by choosing to participate in the employer's Plan, the employee agrees "to accept the Plan benefits as the only benefits you are entitled to receive in the event of a work-related injury and to waive any and all other causes of action, claims, rights, and demands that you could make against the Company, its successors, assigns, employees, officers, directors, shareholders, agents and clients." Appellee argues that it is entitled to claim the benefit of this waiver as a third-party beneficiary since it is a "client" of B & C, the employer.

■ We reject appellant's assertion that the *MCI* case requires that we hold appellee is not a third-party beneficiary. That case turned on express language which stated that the contract was only for the benefit of the signatories. The cases cited by appellee reflect agreements containing language with similar meaning as the waiver before us today when applied to non signatories. Consistent with *Temple EasTex, Inc.*, we conclude that the listing of the entities within the language of the waiver reveals the parties' intent that the waiver provision extends to all of those entities. The waiver plainly extends to "clients."

■ Appellee argues further that regardless of whether it is a third-party beneficiary under the Agreement, it has established its affirmative defense of waiver as a matter of law. "The elements of waiver include (1) an existing right, benefit, or advantage; (2) a knowledge, actual or constructive, of its existence; and (3) an actual intention to relinquish it (which can be inferred from conduct)." *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.-Texarkana 1992, writ denied).

■ Appellee maintains that the existence of decedent's rights under the common law of Texas, knowledge of those rights and the intentional waiver of those rights, are all contained in the waiver in the Agreement that was signed by decedent. Thus, the waiver in the Agreement signed by the decedent expresses his intent to relinquish his right to sue "clients" of his employer. Also, we note that summary judgments based on similar pre-injury waivers have been upheld against employees in lawsuits with their employers. *See, e.g., Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 554 (Tex.2001); *Wolfe v.C.S.P.H., Inc.*, 24 S.W.3d 641, 645 (Tex. App.-Dallas 2000, no pet.); *Brito v. Intex*

*Aviation Servs., Inc.*, 879 F.Supp. 650, 654 (N.D.Tex.1995).

We agree with appellee. Even if we had concluded that appellee was not a third-party beneficiary, the waiver was effective to relinquish decedent's rights to sue the "clients" of his employer.

B) Meaning of the Term "Client" and Conflict with Other Agreement Terms

■ In oral argument, appellants acknowledged that appellee was a "client" of B & C. However, appellants contend that appellee was not a "client" for the purposes of the waiver in the Agreement signed by the decedent in an action against appellee based on allegations of appellee's own negligence. Specifically, appellants tell us that to interpret the term "client" to include appellee would frustrate the purposes of the Agreement as a whole because it would defeat a subrogation provision in favor of the MEGA Life and Health insurance company in the MEGA Life policy which funds the Plan as well as a separate assignment provision in the Plan Agreement.

■ Appellants assert that to harmonize the subrogation, assignment, and waiver terms of the Agreement, the waiver provision must be construed to exclude direct claims of negligence against third parties. Otherwise, appellants say, the subrogation and assignment rights would be meaningless. In support of this position, appellants rely on the rule of contract construction that "[w]hen interpreting a contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless." *MCI Telecomms. Corp.*, 995 S.W.2d at 652. Independent of appellants' briefing, we recognize the applicability of the rule of construction that "instruments pertaining to the same transaction may be read together to ascertain

the parties' intent," and "[i]n appropriate instances, courts may construe all the documents as if they were part of a single, unified instrument." *Fort Worth Indep. Sch. Dist. v. Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000).

In response to appellants' argument, appellee asserts that the Agreement does not contain inconsistent provisions in need of reconciliation. Rather, the assignment and subrogation provisions apply to any claims the employee could assert against negligent third parties other than clients of B & C and the other entities expressly named in the waiver. In support of that proposition, appellee says we should consider that appellants have sued F–M Metals, a sub-contractor whom appellee asserts is not covered by the terms of the waiver.

In urging its position that the term "client" must be narrowly construed to exclude appellee, appellants place substantial reliance on this Court's decision in *Jenkens & Gilchrist v. Riggs*, 87 S.W.3d 198 (Tex.App.-Dallas 2002, no pet.). Riggs, the plaintiff, was a reporter who had worked for WFAA in Dallas. He sued the Jenkens & Gilchrist law firm for "erroneous legal advice." His claim was premised on legal advice provided to him and WFAA respecting Riggs's proposed investigation techniques. Riggs complained that because he followed the legal advice provided to him and WFAA, and the advice was wrong, according to the Jenkens lawyer himself, Riggs was sued by the subjects of his investigation. When Riggs sued Jenkens, the law firm attempted to claim the benefit of Riggs's employment contract with WFAA to compel arbitration. The employment contract provided that "the parties consent to the final and binding arbitration of all claims and disputes which may arise between the parties.... Such claims and disputes will include any

claims or disputes ... that you might have against [WFAA] ... and/or agents." *Id.* at 202. Jenkens argued that it was the employer's "agent." This Court held that the arbitration provision extended only to claims by Riggs under his employment agreement against agents of WFAA for whom WFAA would be vicariously liable. *Id.* Also, this Court noted that the law firm could be WFAA's agent for some purposes, but not for others.

Appellants assert that we should apply the reasoning in *Jenkens* to interpret the waiver to apply only to "clients" for whom B & C would be vicariously liable. They tell us that the term "clients" could include appellee for some purposes, but not others. Further, appellants say that such an interpretation will reconcile otherwise inconsistent provisions of the Agreement. In response, appellee says *Jenkens* cannot apply here and is distinguishable. Appellee argues that courts interpret arbitration clauses more narrowly than pre-injury releases since arbitration agreements involve the forfeiture of the constitutional protections of the judicial system. *Jenkens*, 87 S.W.3d at 202.

In addition to the distinction suggested by appellee, we note that, in *Jenkens*, this Court did not broadly state that an "agent" must be an entity for whose actions the principal could be vicariously liable. Rather, the interpretation was based upon the unique facts of the case. In discussing whether Jenkens was an "agent" of WFAA under the arbitration agreement and in the context of the malpractice claim, this Court concluded that Jenkens was an independent contractor. This Court reasoned that although WFAA hired the lawyers to provide advice to it and Riggs, lawyers are independent contractors since in giving legal advice they could never perform as an agent of WFAA. A lawyer cannot vest in a third

party the control necessary to render the third party vicariously liable for the lawyer's conduct. *Id.* at 202. The interpretation of that term in the context of the arbitration agreement in *Jenkens* required a deliberate evaluation of the implications of construing the term to include *any* "agent," as contrasted with only those "agents" for whom the employer would be vicariously liable.

In the case before us, we must determine the meaning of the term "client" even though it is not defined in the Agreement. Where terms are not defined in agreements, we will use the plain, ordinary and generally accepted meaning attributed to the term or word. *Heritage Res. Inc.,* 939 S.W.2d at 121. Dictionaries may provide assistance to courts in finding that meaning. *Corpus Christi v. Bayfront Assocs.,* 814 S.W.2d 98, 104 (Tex.App.-Corpus Christi 1991, writ denied). "Texas courts often resort to the use of external references such as dictionaries to determine an insurance policy term's plain, ordinary, and generally accepted meaning." *Mescalero Energy, Inc. v. Underwriters Indem. Gen. Agency, Inc.,* 56 S.W.3d 313, 320 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). "Client" is defined as "a person who engages the professional advice or services of another," or as a "patron or customer." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 422 (1981).

In the final analysis, appellants have asked us to graft the restrictions of vicarious liability which we concluded existed for the term "agent" in the *Jenkens* case, onto the term "client" as used here. However, this we cannot do. The meaning of the term "client" is distinct from that of the term "agent." "An agent is one who consents to act on behalf of and subject to the control of another, the principal, who has manifested consent that the agent shall so act." *West v. Touchstone,* 620 S.W.2d 687, 690 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.). Unlike an "agent," a "client" does not necessarily act for anyone other than itself and is obviously a customer for whom B & C provided services. Further, when one reviews carefully the language of the waiver, the difference between the terms is apparent. The waiver expressly lists those against whom claims are waived. Besides the Company, i.e. B & C, its "agents and clients" are included. It is clear by inclusion of both "agents" and "clients" in the list of those subject to the waiver, that each term is intended to encompass different categories of persons.

We conclude that the plain meaning of the term "client" includes appellee. Further, the waiver of claims against "clients" does not destroy the assignment and subrogation provisions of the Agreement. Thus, the waiver does not create a conflict within the document itself and does not require that the meaning of the term "clients" be limited as appellants argue. Appellants' first issue is decided adversely to them.

### ADDITIONAL GROUNDS FOR SUMMARY JUDGMENT

Appellants argue in their second issue on appeal that appellee is not entitled to summary judgment on the grounds of ratification, the doctrine of quasi-estoppel and acceptance of benefits, or the doctrine of election of remedies because these grounds all depend on appellee's status as a third-party beneficiary of the Plan Agreement. Because we conclude that appellee was entitled to summary judgment on the affirmative defense of waiver, we do not reach this issue.

### GENUINE ISSUES OF MATERIAL FACT

In their third issue on appeal, appellants argue both that the Agreement

signed by the decedent in 1999 was not in effect when he was injured, and that there is a genuine issue of material fact regarding whether the decedent was required to sign a Plan Agreement each and every year he wished to enroll in the Plan.

It is clear that appellee has the burden of proof on its affirmative defenses in a motion for summary judgment. *See Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 495 (Tex.1991); *Orozco*, 975 S.W.2d at 397. "Once the defendant produces sufficient evidence to establish a right to summary judgment, the plaintiff must set forth sufficient evidence to give rise to a genuine issue of material fact." *Orozco*, 975 S.W.2d at 397. In deciding whether a disputed issue of material fact exists which would preclude summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d at 548–49.

On March 4, 1999, when the decedent signed the Agreement containing the waiver and release, he also signed a beneficiary designation form. This beneficiary designation form refers to group policy number UDB 248, under which benefits are payable. An undated schedule of benefits form, which is signed by the decedent, recites that it is effective January 11, 1999, and refers to this insurance policy. This policy apparently expired and was replaced by group insurance policy number UDC 248, but there were no forms signed by the decedent which reference this later group policy. Essentially, appellants argue that because the insurance policy which was in effect when the decedent signed the Agreement was not in effect when the decedent was injured, the Agreement containing the waiver was no longer in effect. Appellants argue that the insurance policies are synonymous with the Plan and that when the group insurance policy funding the Plan changed, the Plan

itself changed and a new, signed Agreement was necessary.

 In reviewing these arguments we are guided by the proposition that although "[u]nder generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together ... this rule is simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily." *DeWitt County Elec. Co-op v. Parks*, 1 S.W.3d 96, 102 (Tex.1999). The Summary Plan Description explicitly provides that the Company might fund its obligations under the Plan with insurance. However, it provides further that the employee will have no interest in such insurance and such insurance will not affect the Company's obligations under the Plan. Thus the insurance policies funding the plan do not supplant the Plan. The Agreement which the decedent signed in 1999 in order to participate in the Plan makes no reference to any specific insurance policy, nor even to insurance in general. Further, the Agreement does not contain any language indicating that its term is limited or that it would not be effective on the date of decedent's injury. Thus, we resolve against appellants their argument that the Agreement signed by the decedent in 1999 was not in effect when he was injured.

 Next, appellants argue that appellee has failed to meet its burden of proof on its affirmative defense of waiver for the purposes of obtaining summary judgment because there is a genuine issue of material fact regarding whether the decedent was required to execute a Plan Agreement annually. In support of its affirmative defense, appellee offered in evidence the Agreement containing a waiver dated March 4, 1999 bearing the decedent's signature. Appellee also offered the testimony of one of B & C's owners that it was not

the usual practice of B & C to require that employees annually sign Plan Agreements.[2] Appellants acknowledge the Plan documents are silent as to any requirement for annual releases, but they argue silence does not prove annual releases are *not* required. Moreover, appellants argue that a fact issue regarding whether annual waivers are required is created by the existence of an Agreement dated 2000 which purported to bear the decedent's signature, but is claimed to be a forgery, and by the existence of a signed beneficiary designation form in 1999 which refers to a specific insurance policy.

Appellee counters that the Agreement does not require that it be signed annually, nor do the Summary Plan Description or the group insurance policy require that employees sign Plan Agreements annually. Appellee points out this Plan is governed by the Employee Retirement Income Security Act of 1974, as amended, ERISA, 29 U.S.C. §§ 1001–1469, which requires such plans to be in writing. Finally, appellee cites this Court to a seventh circuit case for the proposition that informal procedures which contradict the terms of a Plan are prohibited under ERISA. *Schoonmaker v. Employee Sav.'s Plan,* 987 F.2d 410, 413 (7th Cir.1993).

Regardless of whether a requirement that waivers be signed annually would contradict the terms of the Plan, appellants have not shown that there is a fact issue regarding whether annual waivers are required. The existence of a beneficiary designation form referring to a · specific group insurance policy which funds the Company's obligations under the Plan does not affect the terms of the Agreement.

Likewise, the existence of an allegedly forged Plan Agreement dated in 2000, does not create a fact issue regarding whether annual Agreements are required when the terms of the Agreement and Summary Plan Description do not require that Agreements be signed annually.

Appellants' third issue is resolved against them.

Having resolved appellants' first and third issues adversely to them, we affirm the trial court's judgment.

---

**2.** Evidence which favors the movant's position is not considered unless it is uncontradicted. If such uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach such testimony. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply,* 391 S.W.2d 41, 47 (Tex. 1965).