Reversed and Rendered and Memorandum Opinion filed December 13, 2007








Reversed and
Rendered and Memorandum
Opinion filed December 13, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00436-CV

____________

 

ALLSTATE INDEMNITY COMPANY AND
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, Appellants

 

V.

 

HADLEY MEDICAL CLINIC, HAMPTON
MEDICAL CLINIC, IMPERIAL VALLEY MEDICAL CLINIC, AND SOUTHWEST HOUSTON PHYSICIAN
CENTER,
Appellees

 



 

On Appeal from the County
Civil Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 830807

 



 

M E M O R A N D U M   O P I N I O N








Appellants, Allstate Indemnity Company and Allstate
Property and Casualty Insurance Company, appeal from a judgment favoring
appellees, Hadley Medical Clinic, Hampton Medical Clinic, and Imperial Valley
Medical Clinic.[1] 
Appellees, healthcare providers who treated individuals purportedly injured in
automobile collisions with drivers insured by appellants, sued appellants
claiming to be third-party beneficiaries of settlement agreements between
appellants and the individual patients.  A jury found that appellees were
indeed third-party beneficiaries of the agreements, that appellants breached
the agreements, and that appellants were estopped (quasi-estoppel) from denying
appellees= third-party-beneficiary status.  Based on the
verdict, the trial court entered judgment favoring appellees for a total of
$35,728.22 (including pre-judgment interest and attorney=s fees), plus
post-judgment interest.

In three issues, appellants contend that:  (1) the evidence is legally and
factually insufficient to support the finding that appellees were third-party
beneficiaries of the settlement agreements; (2) the trial court erred in
submitting the third-party-beneficiary issue to the jury because it was a
matter for the court to decide; and (3) the evidence is legally and factually
insufficient to support the finding that appellants were estopped from denying appellees= third-party-beneficiary
status.  Because the
evidence is legally insufficient to support the jury verdict that (1) appellees
were third-party beneficiaries and (2) appellants were estopped from denying appellees= third-party-beneficiary
status, we reverse and
render judgment that appellees take nothing.

I.  Background








As stated above, appellees treated patients who were purportedly involved in
automobile accidents with drivers insured by appellants.  At the time of
treatment, appellees required the patients in question to sign Aassignments of rights@ that granted certain rights to
appellees, including the Aright to any cause of action . . . against any insurance
company@ for damages, at least to the extent
of the incurred medical bills.  Each of these assignments also included a
section titled ADemand for Payment,@ which was addressed A[t]o any insurance company providing
benefits or damages of any kind to [patient(s)] for treatment rendered by the
doctor/clinic/healthcare provider named above.@  This section further purported to
instruct insurers to Apay in full the bill for services rendered,@ to make checks payable to both the
patient and the healthcare provider, and to mail the checks to the healthcare
provider=s attorney=s office.

Although
it appears unlikely from the evidence at trial that appellants ever received
the assignments themselves, the evidence strongly supports the conclusion that
appellants received letters from appellees referencing the assignments and
excerpting key language about the assignment of rights and Demand for Payment. 
The appellants subsequently settled the patient=s claims by drafting checks payable
solely to the patients and delivering the checks directly to the patients.  In
conjunction with the settlements, appellants required that the patients sign
releases.  As will be discussed in greater detail below, of the eight patients
on whom the judgment was based, three signed one particular form of release,
three signed another form of release, and for two of the patients, no release
was admitted into evidence.  Appellees argue, however, that the jury could have
inferred from the existence of the settlement checks and the other releases
that the two remaining patients had indeed signed releases.

Appellees
sued appellants alleging that because they (appellees) were third-party
beneficiaries of the settlement agreements, appellants breached the agreements
by failing to pay appellees directly for the health care provided to the
patients.  In the alternative, appellees alleged that appellants were estopped
(quasi estoppel) from denying appellees=
third-party-beneficiary status, apparently based on appellants= use of appellees= medical bills in calculating how
much to pay the patients in settlement of their claims.  The jury found for
appellees on both issues (third-party beneficiary and quasi estoppel).[2]  On appeal, appellants:  (1) attack
the sufficiency of the evidence on the third-party beneficiary finding; (2)
contend that the court erred in submitting that issue to the jury; and (3)
attack the sufficiency of the evidence on the estoppel finding.








II.  Third-Party Beneficiaries

In their
first issue, appellants attack the legal and factual sufficiency of the
evidence to support the jury=s finding that appellees were third-party beneficiaries of
the settlement agreements between appellants and the various patients.  We
begin by considering the legal sufficiency of the evidence on this issue.  In
doing so, we utilize the usual standards of review, considering the evidence in
the light most favorable to the verdict and indulging every reasonable
inference that would support it.  See City of Keller v. Wilson, 168
S.W.3d 802, 809-23, 827-28 (Tex. 2005).

The
legal rules governing third-party beneficiaries are well-established, as
recently recited by the Texas Supreme Court:

First, there is a presumption against conferring third‑party‑beneficiary
status on noncontracting parties.  In deciding whether a third party may
enforce or challenge a contract between others, it is the contracting parties= intent that controls.  The intent to
confer a direct benefit upon a third party must be clearly and fully spelled
out or enforcement by the third party must be denied.  Incidental benefits that
may flow from a contract to a third party do not confer the right to enforce
the contract.  A third party may only enforce a contract when the contracting
parties themselves intend to secure some benefit for the third party and
entered into the contract directly for the third party=s benefit.  To qualify as one for
whose benefit a contract was made, the third party must benefit more than
incidentally; he must be either a donee or creditor beneficiary.  A person is a
donee beneficiary if the performance promised will come to him as a pure
donation.  If performance will come to satisfy a duty or legally enforceable
commitment owed by the promisee, then the third party is considered a creditor
beneficiary.

S. Tex. Water Auth. v.
Lomas, 223 S.W.3d
304, 306 (Tex. 2007) (internal quotation marks and citations omitted).








Generally,
the question of whether a particular party is a third-party beneficiary to a
contract is treated as a matter of contract interpretation; thus, it should
only go to a jury if the contract is deemed to be ambiguous.  See MCI
Telecomms. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999) (AOur analysis of the third-party
beneficiary issue requires us to interpret the contract . . . .  When a
contract is not ambiguous, the construction of the written instrument is a
question of law for the court.@); Pratt-Shaw v. Pilgrim=s Pride Corp., 122 S.W.3d 825, 829 (Tex. App.CDallas 2003, no pet.) (containing
similar language and analysis).  Here, there appears to have been neither
argument from the parties below nor an explicit ruling from the court as to
whether the settlement agreements in question were ambiguous.  Although in
their second issue on appeal, appellants contend that the trial court erred in
submitting the third-party beneficiary issue to the jury and not deciding the
matter itself, appellants cite no portion of the record wherein this argument
was preserved below.  Our review of the record has likewise revealed no such
preservation.

Appellants
also did not object to the language used in the charge.  Because appellants did
not object to the charge and did not argue below that the
third-party-beneficiary issue was one for the judge and not the jury, we shall
review the sufficiency of the evidence in light of the charge as given.  See
Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000).  The charge given to the
jury instructed on the third-party-beneficiary question only as follows:  AA party suing [as] a third party
beneficiary must show: 1) it is not privy to the written agreement; 2) the
agreement was actually made for its benefit and that; [sic] 3) the contracting
parties intended it to benefit by the agreement.@[3]  Appellants make no arguments
regarding the first element presented in the charge (that appellees were not
privy to the contracts in question), but they do contend that there was no
evidence to support the finding that the agreements were made for appellees= benefit or that the contracting
parties intended appellees to benefit from the settlement agreements.








Appellees= theory of the case is that because
evidence demonstrated the patients= and appellants= awareness of the assignments of
rights to appellees at the time they entered into the settlement agreements (as
evidenced by the letters sent by appellees referencing and excerpting the
assignments), the use of the term Aassigns@ in the releases necessarily referred
to appellees.  Thus, according to appellees, the parties to the settlement
agreements must have intended to confer a direct benefit upon them.  As
mentioned above, of the eight patients on whom the judgment was based, three
signed one particular form of release, three signed another form of release,
and there is only inferential evidence that the remaining two signed any form
of release.  One of the releases signed by three of the patients contained the
following language:

[I]n consideration of [a sum certain], receipt whereof
is hereby acknowledged, for myself and for my heirs, personal representatives
and assigns, I do hereby release and forever discharge [the
insured driver] and any other person, firm or corporation charged or chargeable
with responsibility or liability, their heirs, representatives and assigns,
from any and all claims, demands, damages, costs, expenses, loss of services,
actions and causes of action, arising from any act or occurrence up to the present
time and particularly on account of all personal injury, disability, property
damages, loss or damages of any kind already sustained or that I may hereafter
sustain in consequence of an accident that occurred on [a specific date at a
specific location].

(Emphasis added).








As
stated, appellees assert that the first reference to Aassigns@ in this paragraph of the release
form evidences the parties= intention to confer a direct benefit upon them.  We do not
agree that the language is capable of this interpretation.  To begin with, even
assuming appellees were intended to be included in the reference to Aassigns,@ the release says nothing about any
payment to the assigns, direct or otherwise.  In fact, the release essentially
negates the very idea that appellants were to pay any additional sums or any
sums to anyone other than the particular patient-signatory.  In each signed
release, the patient acknowledged receipt of a sum certain and in consideration
for that specific amount, released all claims for him or herself as well as his
or her assigns.  The language, indeed, appears specifically tailored to negate
the possibility that appellants could owe any additional sums to the patient or
anyone else to extinguish any claims made by or through the patient.[4]

The
other release admitted into evidence and signed by three patients contained the
following language:

The undersigned, [patient], (hereinafter referred to as RELEASOR)
acknowledges the receipt of [a sum certain] in consideration for the judgment
and release in this cause, and RELEASES, QUITCLAIMS AND FOREVER DISCHARGES
[appellant, insured driver], their spouse(s), [sic] heirs, executors, assigns,
agents . . . from all liability claims . . . demands, damages, costs, expenses,
loss of service, actions and causes of action arising from any acts or
occurrences up to the present time, and particularly on account of all personal
injury, disability, property damage, loss or damages of any kind which have
accrued or may accrue to the RELEASOR, RELEASOR=S spouse, heirs, executors, assigns, agents, servants,
employees, insurance carriers, and attorneys in consequence of an incident that
occurred on [a specific date], which gave rise to this suit . . . .  RELEASOR
agrees that this release shall apply to all unknown and unanticipated injuries
and damages resulting from the incident, casualty, or event, as well as to
those now disclosed which form the basis of this suit.

As further consideration for full and final payment, RELEASOR warrants
that RELEASOR has made no assignment of RELEASOR=S claims, or any part of them, to any other person, firm, or
corporation other than RELEASOR=S attorneys,
and that there are no current or outstanding hospital or other liens in
connection with or arising out of the incident made the subject of this suit.

In further consideration for the
payment of this sum, RELEASOR hereby agrees to indemnify and hold harmless
RELEASED PARTIES against and from any and all claims, demands, causes of action
and/or judgments asserted or caused to be asserted against RELEASED PARTIES
which any person, firm, or corporation has or may claim by, through or under
RELEASOR in connection with the matters made the subject of this lawsuit and
release.








(Emphasis added).  

Again,
appellees assert that the reference to Aassigns@ in the release language evidences
the parties= intention to confer a direct benefit upon them, and again, we do not
agree that the language is susceptible of this interpretation.  As with the
release form discussed above, by signing this release form, each patient
acknowledged receipt of a particular sum and, in consideration for that sum,
released all claims on behalf of him or herself and his or her assigns, among
others.  Nothing in the release form suggests that any additional sums must be
paid to anyone or that payment should be made in any other manner than directly
to the patient.  Even assuming that one of the appellees was an assignee of the
particular patient, this release form contains no language requiring or even
suggesting that a particular appellant had to pay anything to any assignee or
appellee.

Furthermore,
other language in the release affirmatively contradicts any assertion that a
particular appellant was promising to pay any sums directly to any appellee.[5] 
The patient-signatory (1) warranted that he or she had made no assignment of
any claims, in whole or in part, to anyone other than his or her attorney, and
(2) agreed to indemnify and hold harmless the particular appellant against any
and all claims that may be made through the patient in connection with the
subject auto collision.  These additional terms negate the possibility that the
parties may have intended for any third-party beneficiary to have an
enforceable right to recover any portion of the settlement proceeds directly
from appellants.








Regarding
the two patients for whom no release was admitted into evidence, appellees
argue that the existence of letters notifying appellants about assignments from
these two patients and checks issued to the two patients supports the
reasonable inference that the patients each signed releases with the same
language or similar language to the other releases that were admitted into
evidence.  Assuming appellees= argument is correct, the evidence concerning these two
patients fails for the same reasons as the evidence regarding the other
patients and the admitted releases.

Appellees
additionally cite several cases in which courts held that third parties
mentioned in releases were intended third-party beneficiaries and thus could
enforce the terms of the release in any action against them by the releasor.  See
Pratt-Shaw, 122 S.W.3d at 830-31; Temple Eastex, Inc. v. Old Orchard
Partners, Ltd., 848 S.W.2d 724, 730 (Tex. App.CDallas, writ denied); Derr Constr.
Co. v. City of Houston, 846 S.W.2d 854, 860 (Tex. App.CHouston [14th Dist.] 1992, no writ). 
These cases, however, do not support appellees= position.  In each of the cited
cases, the release in question expressly granted a specific benefit to a
clearly identified third party, i.e., the third party was released from
any liability to the releasor.  See Pratt-Shaw, 122 S.W.3d at 830-31; Temple
Eastex, 848 S.W.2d at 730; Derr Constr., 846 S.W.2d at 860.  Here,
as discussed above, even to the extent that appellees were included in the
releases (via Aassigns@), it was in the context of the patients= waiver of appellees= rights to sue as the patients= assignees.  The releases do not
affirmatively convey any rights on appellees.  The suggestion that  appellees
might have received payment derived from settlement funds paid by appellants to
the patients would render appellees, at most, incidental beneficiaries, not
intended beneficiaries.  See MCI Telecomms. v. Tex. Utils. Elec. Co.,
995 S.W.2d 647, 650 (Tex. 1999) (holding that any benefit to the third party
under the contract at issue was merely incidental and did not evidence a clear
intent of the parties to contract for the direct benefit of that third party); see
also restatement (Second) of
Contracts '' 302, 315 (1981) (defining intended and incidental
beneficiaries and explaining that incidental beneficiaries possess no right to
enforce the contract against the promisor or the promisee).[6]








There is
no evidence that the settlement agreements were entered into for appellees= benefit or that appellants and the
patients intended for appellees to benefit from the agreements.  Therefore, we
hold that there is no evidence to support the jury=s finding that appellees were
third-party beneficiaries of the agreements.  Accordingly, we sustain
appellants= first issue.  Because of our holding on this first
issue, we need not consider appellants= second issue, in
which appellants argue that the trial court erred in submitting the
third-party-beneficiary issue to the jury.

III.  Quasi Estoppel

In their
third issue, appellants attack the legal and factual sufficiency of the
evidence to support the jury=s finding that appellants were barred by the doctrine of
quasi-estoppel from denying appellees=
third-party-beneficiary status.  Again, we consider the legal sufficiency of the evidence first and
apply the usual standards of review.  See City of Keller, 168 S.W.3d at
809-23, 827-28.

The
doctrine of quasi-estoppel precludes a party from asserting, to another=s disadvantage, a right inconsistent
with a position previously taken by the party.  Lopez v. Munoz, Hockema
& Reed, L.L.P., 22 S.W.3d 857, 864 (Tex. 2000); Steubner Realty 19,
Ltd. v. Cravens Road 88, Ltd., 817 S.W.2d 160, 164 (Tex. App.CHouston [14th Dist.] 1991, no writ). 
The doctrine applies when it would be unconscionable to allow a party to
maintain a position inconsistent with one in which it acquiesced or of which it
accepted a benefit.  Lopez, 22 S.W.3d at 864; Steubner Realty 19,
817 S.W.2d at 164.  Thus, quasi‑estoppel prevents a party from accepting
the benefits of a transaction and then subsequently taking an inconsistent
position to avoid corresponding obligations or effects.  Eckland
Consultants, Inc. v. Ryder, Stilwell Inc., 176 S.W.3d 80, 87 (Tex. App.CHouston [1st Dist.] 2004, no pet.). 
The trial court tracked these principles in the charge, and no objections were
made thereto.








Appellees= theory of quasi-estoppel is that
appellants (1) took an inconsistent prior position in that they accepted
medical records from appellees and used them in settlement negotiations with
the patients, and (2) derived a benefit from the earlier position because they
were able to induce more favorable settlement terms by using the bills during
negotiations.  Regarding the allegedly inconsistent prior position, even if
appellees are factually correct that appellants used the bills in calculating
settlement amounts, it is difficult to see how receiving and using medical
records in negotiations would be inconsistent with denying that appellees were
third-party beneficiaries to the later-signed settlement agreements.[7]

Appellees
imply that by receiving the records and using them to settle the cases,
appellants essentially admitted that they were liable for paying the medical
bills.  We disagree.  Settling a case generally does just that:  it resolves
the issues between the parties without admission of culpability, fault, or
liability.  See Henson v. S. Farm Bureau Cas. Ins. Co., 17 S.W.3d 652,
654 (Tex. 2000) (holding that the fact of settlement alone did not establish
fault).  Here, both release forms in the record contain specific language
denying that in settling, appellants were admitting to any liability for
damages.  Thus, settling the cases did not constitute an admission that
appellants (as insurers of particular drivers) were liable for the medical
bills, much less that appellees were intended third-party beneficiaries of the
settlement agreements.  The evidence demonstrates at most that appellants
simply relied upon the amount of the bills in making their settlement
calculations.








Next, we
turn to the question of whether appellants derived any benefit from using the
medical records in settlement negotiations.  Although arguably, in a general
sense, it can be said that appellants benefitted from settling the cases, e.g.,
from the fact that the one-time potential liability could then be concretely
ascertained, there is no evidence that appellants benefitted by receiving the
medical bills and using them in calculating settlement amounts.  Without citing
supporting evidence, appellees suggest that appellants benefitted because the
bills were so reasonable.  Our review of the record reveals no evidence that the
bills in question represented relative bargains to the insurance companies. 
One witness, a former administrator for appellees, testified that sometimes
doctors discount bills to encourage patients to pay, but she did not testify
that any amounts were deducted from bills involved in the present case or that
the bills represented any type of bargain or benefit for the insurance
companies.  No other witness testified on any matter related to the
reasonableness of the medical bills.[8]  Finding no evidence to support the jury=s verdict on
quasi-estoppel, we sustain appellants= third issue.

Having sustained appellants= first and third issues, we reverse
the trial court=s judgment and render judgment that
appellees take nothing on their causes of action against appellants.

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment rendered
and Memorandum Opinion filed December 13, 2007.

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.









[1]  All claims of plaintiff below and titular appellee
Southwest Houston Physician Center were nonsuited prior to trial.  None of the
issues on appeal concerns this appellee.





[2]  The jury was also asked whether appellants
intentionally interfered with the contracts between appellees and the
patients.  The jury answered these inquiries in the negative.





[3]  The charge, therefore, omitted several principles
explicit in the case law, most notably: (1) the presumption against conferring
third-party-beneficiary status, and (2) that the intent to confer a direct
benefit must be clearly and fully spelled out in the contract.  See Lomas,
223 S.W.3d at 306.  





[4]  In his testimony, the former attorney for appellees
who drafted the assignments made the focus of this case, acknowledged that Alooking at the face of the release@:  (1) the patient was purporting to accept money on
behalf of himself and his or her assigns, (2) the patient was purporting to
release any claims of his or her assigns in exchange for the amount received,
and (3) the release did not indicate whether any of the money was to go to the
assigns.





[5]  Under well-established rules of contract construction,
specific provisions cannot be read in isolation but must be considered in the
context of the whole contract.  In re Ford Motor Co., 211 S.W.3d 295,
298 (Tex. 2006); Coats v. Farmers Ins. Exchange, 230 S.W.3d 215, 219
(Tex. App.CHouston [14th Dist.] 2006, no pet.).





[6]  As described in the Restatement, the quintessential
third-party-beneficiary scenario occurs as follows:  AA owes C $100.  For consideration B promises A to pay
the debt.  B breaks his contract.  C may sue B and obtain judgment for the
amount of the debt.@  restatement
(Second) of Contracts ' 302, illus.
1.  In the case before us, the settlement agreements reference direct payments
from appellants to the patients but do not mention any payment of debts to
third parties.  Indeed, as described in the text above, the releases themselves
negate the possibility that appellants were promising to pay anything directly
to any third party. 





[7]  As evidence that the bills were used in negotiating
settlement, appellees point to language in the releases stating that the
parties took into account the damages incurred by each patient in determining
the settlement amounts.





[8]  The true import of the medical bills received by
appellants and used to calculate settlement amounts appears to be that they
helped the patients establish that they incurred a certain amount of healthcare
expenses as a result of the auto collisions.  In other words, if anything, the
bills resulted in appellants= paying claims
that included medical expenses; whereas, without such documentation, the
settlement amounts might have been lower, not higher.  In fact, appellees
stated in their brief:  AThe extent of the medical bills, in large part,
determined the amount of the settlement.@