**Reverse and Render and Opinion Filed December 8, 2014**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-01128-CV

**THE BOARD OF ADJUSTMENT OF THE CITY OF UNIVERSITY PARK, TEXAS, Appellant**

**V.**

**LEGACY HILLCREST INVESTMENTS, LP, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-15353**

## MEMORANDUM OPINION

Before Justices Francis and Myers and Chief Justice Thomas, Ret.[1]
Opinion by Justice Francis

The Board of Adjustment of the City of University Park, Texas, appeals the trial court's

judgment in favor of Legacy Hillcrest Investments, LP. In three issues, the Board claims the trial

court erred by (1) reversing the Board's decision regarding the City's zoning ordinance, (2)

finding violations of the Texas Open Meetings Act and granting a permanent injunction against

the Board to prohibit future violations of the same, and (3) awarding Legacy attorney's fees. We

reverse the trial court's judgment.

Legacy is a Texas limited partnership that owns land at 3410-3412 Haynie Street in the

City. The two lots are located south of a planned development known as Snider Plaza and north

of a single-family district. The Southern Methodist University law school lies to the east of the

---

[1] The Honorable Linda Thomas, Chief Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment.

lots, and a multifamily lot borders them to the west. The lots are zoned O for office, P for Parking, and MF for multifamily.

Legacy has sought, on various occasions, to develop the property by rezoning the lots as PD or planned development. In 2001, Legacy proposed a 270,500-square-foot building for office, restaurant, and bank use, along with the City library and YMCA, with an underground parking garage structure. The Planning and Zoning Commission denied the request. In 2006, Legacy requested a zoning change to PD, presenting a concept plan for a 320,000-square-foot building for restaurant, retail, office, hotel, bank, library, and multifamily use along with eight single-family use units with an underground parking structure. In response to opposition from the area residents and the City, Legacy reduced the square footage of the building to 312,000 square feet, and later to 260,000 square feet. Again, the Planning and Zoning Commission denied the request. Shortly thereafter, Legacy submitted a request for an amended plan for 217,500 square feet plus eight single-family homes with underground parking. Although the Planning and Zoning Commission voted to approve a PD plan with a total of 135,000 square feet, excluding the eight homes, Legacy withdrew its application. In 2009, Legacy again proposed rezoning the lots as PD with a proposed building not to exceed 435,000 square feet, including an above-ground parking garage. The City Council agreed to grant a total of 136,000 square feet for the entire development; this resolution was later rescinded at Legacy's request.

In 2011, Legacy sought a change of zoning of only the parking and office portions of the lots to PD for a 150,000-square-foot mixed-use development to include a hotel, one single-family unit, offices, and retail use with "parking below grade." The Planning and Zoning Commission approved the proposal, subject to a maximum total square footage of 135,000; the proposal was referred to the City Council for approval. At the hearing, Legacy stated it supported the 135,000-square-foot proposal recommended by the Planning and Zoning

Commission but that it was the "bottom-line level of density and subsurface parking that can realistically be built and still allow a quality development." Legacy cautioned that if it were denied its rezoning request and limited to building under the existing zoning designation of office, the maximum size development would be 108,000 square feet, which would require a three-level, above-ground parking garage to meet the requirements of the code because subsurface parking spaces would not be economically feasible for a 108,000-square-foot development. At the October 4, 2011 City Council meeting, Legacy issued the following statement:

> [We have] tried to create an acceptable development proposal that will benefit all parties. . . [We] understand from an earlier Council statement that the Council is going to deny the application today. . . Legacy currently plans to develop under existing zoning which will include a thirty-five foot parking garage, which . . . is the only economically feasible option to redevelop the site. . . [T]he city has made clear for the past ten years that above-grade parking is allowed under existing zoning and Legacy Hillcrest has proceeded in good faith under those assurances.

Following this statement, the City Council voted to deny the application.

While the fourth PD application was pending, Legacy also sought a permit to allow for construction of an above-ground, multi-level parking garage only on the portion of the Haynie lot zoned P, Parking District. Robert Lee Corder III, director of community development for the City, and his department reviewed the application for compliance with the zoning ordinances, including section 23-101, entitled "P, Parking District." That section states "[o]nly surface parking lots may be located adjacent to a Single-Family District." After concluding the Haynie tract was not adjacent to a single-family district, despite sharing a district boundary line, the community development staff approved and prepared to issue the permit. An appeal was timely filed and, following a public hearing, the Board denied the permit.

Rather than appeal the Board's decision to the City Council, Legacy filed a writ of certiorari in district court. TEX. LOC. GOV'T CODE ANN. § 211.011 (West 2008). After a three-

day hearing, the trial court found the Board erred by overturning Corder's interpretation of the zoning ordinance, concluded the Board's actions were "arbitrary and capricious, an abuse of discretion and . . . not supported by the law or evidence," and reversed the Board's decision. The trial court also found the Board committed four violations of the Texas Open Meetings Act, issued a permanent injunction against future violations, and awarded attorney's fees to Legacy. This appeal followed.

In its first issue, the Board contends the trial court erred by reversing the Board's decision that the proposed parking garage was not allowed under the City's zoning ordinance. Under this issue, the Board argues it has the power to interpret and apply the zoning ordinance and is not required to defer to staff views or opinions. The Board also contends the P-zoned lot is adjacent to a single-family district and, therefore, a multi-level parking garage may not be built there under the City's zoning ordinance. In response, Legacy argues that "adjacent" unambiguously means "contiguous" and section 23-101 permits a multi-level parking lot as long as the parking garage structure itself does not touch the single-family district boundary line. Legacy also argued that the parking structure is not adjacent to a single-family district because the distance from any single-family structure to the walls of a parking structure would be at least one hundred feet.

We apply the same rules to construe municipal ordinances as those used to construe statutes. *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002); *Baird v. City of Melissa*, 170 S.W.3d 921, 924−25 (Tex. App.—Dallas 2005, pet. denied). Our objective in construing the zoning ordinance provisions at issue is to discern the City's intent. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999). We rely on the plain meaning of the text as expressing this intent unless a different meaning is supplied by definition or is apparent from the context, or the plain meaning leads to absurd results. *Tex.*

*Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). In giving effect to the enactment as a whole, we should not assign a meaning to a provision that would be inconsistent with other provisions of the zoning ordinance. *See Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001). Even if a statute is ambiguous, the court construes the statute as a matter of law. *Arrendondo v. City of Dallas*, 79 S.W.3d 657, 667 (Tex. App.—Dallas 2002, pet. denied). Because statutory construction is a question of law, we review the issue de novo. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *Baird*, 170 S.W.3d at 925.

Section 23-101, entitled "P, Parking District" is the zoning ordinance at issue in this case. It provides, in pertinent part, that "[o]nly surface parking lots may be located adjacent to a Single-Family District." CITY OF UNIV. PARK, TEX., ZONING ORDINANCE § 23-101 (2011). The term "adjacent" is not defined in the zoning ordinance; thus, we rely on the ordinary meaning of the word as defined by the dictionary. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *Pratt-Shaw v. Pilgrim's Pride Corp.*, 122 S.W.3d 825, 833 (Tex. App.—Dallas 2003, pet. denied). "Ádjacent" means "to lie near, border on, not distant or far off, nearby but not touching," "lying near or close to, but not necessarily touching," "close to, lying near." *See* WEBSTER'S 3RD NEW INT'L DICTIONARY 26 (1993); BLACK'S LAW DICTIONARY 49 (10th ed. 2014); THE AMERICAN HERITAGE DICTIONARY 21 (4th ed. 2000). The ordinance also provides that the boundaries of districts "indicated as approximately following streets . . . shall be construed to follow the centerline of such street." CITY OF UNIV. PARK, TEX., ZONING ORDINANCE § 6-101. Corder testified the Haynie parking lot district boundary line and the single-family district boundary line immediately to the south of the lot meet in the middle of Haynie Street. The two districts share a common border and touch. Using the plain meaning of adjacent, the lots are near or close to each other. Because the City's zoning ordinance provides

–5–

that only surface parking lots may be located "near" or "close" to a single-family district, we conclude the Board correctly determined a multi-level, above-ground parking garage structure was not allowed on the Haynie lot zoned "P" and that only a surface parking lot may be located there.

In reaching this conclusion, we necessarily reject Legacy's contention that the wording of section 23-101 permits a multi-level parking lot so long as the parking garage structure itself did not touch the single-family district line. Under Legacy's interpretation, a parking garage structure would be prohibited because it would be adjacent only if it were built in the middle of Haynie Street. The plain and common meaning of adjacent, however, is close or near, and may include but does not require touching or contiguity. *See* WEBSTER'S 3RD NEW INT'L DICTIONARY 26 (1993); BLACK'S LAW DICTIONARY 49 (10th ed. 2014); THE AMERICAN HERITAGE DICTIONARY 21 (4th ed. 2000). Our mandate is to presume the City selected the language in the ordinance with care, intending every word or phrase was used with a purpose in mind, and to avoid constructions that lead to absurd results. *See Tex. Lottery Comm'n*, 325 S.W.3d at 635. Because Legacy's interpretation of section 23-101's language would lead to an absurd result, we decline to follow it. We sustain the Board's first issue.

In its second issue, the Board contends the trial court abused its discretion by granting Legacy's request for a permanent injunction. The Board claims there is no evidence to support the trial court's findings that (1) the Board did not keep minutes of its work sessions, formally convene its work session, or properly meet in closed session as required by TOMA, and (2) the chairman of the Board did not identify the applicable sections of TOMA at the conclusion of the work session. The Board further argues that, even if there is evidence to support the findings of violations, the trial court abused its discretion because there is no evidence the alleged violations will probably recur and the injunction enjoined lawful conduct.

When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that no evidence supports the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We sustain a legal sufficiency challenge if "the evidence offered to prove a vital fact is no more than a scintilla." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009). In conducting our review, "we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so." *Id.* "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A legal sufficiency challenge will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

Generally, meetings of governmental bodies must be open to the public. TEX. GOV'T CODE ANN. § 551.002 (West 2012). Section 551.021 states that a governmental body shall prepare and keep minutes or make a recording of each open meeting of the body. *Id.* § 551.021. Section 551.071 provides a governmental body may not conduct a private consultation with its attorney except to discuss "pending or contemplated litigation" or "on a matter in which the duty of the attorney to the governmental body under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas clearly conflicts with this chapter." *Id.* § 551.071. Regarding whether a closed meeting is allowed, section 551.101 provides,

> a governmental body may not conduct the closed meeting unless a quorum of the
> governmental body first convenes in an open meeting for which notice has been

given as provided by this chapter and during which the presiding officer publicly: (1) announces that a closed meeting will be held; and (2) identifies the section or sections of this chapter under which the closed meeting is held.

*Id.* § 551.101; *see Weatherford v. City of San Marcos*, 157 S.W.3d 473, 485, 486 (Tex. App.—Austin 2004, pet. denied) (before closing meeting, presiding officer must publicly announce intent to go into closed meeting and identify statutory basis for doing so, and statement "pursuant to the Government Code, Section 551.071" is sufficient). TOMA also provides that "[a]n interested person . . . may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body." TEX. GOV'T CODE ANN. § 551.142(a).

Corder and Lon Houseman, chairman of the Board, each testified no one took minutes at the November 29, 2011 work session preceding the public hearing on Legacy's application. Houseman said he had been on the Board fifteen years and during that time, they had "never taken Minutes of the work session." The record clearly shows the Board did not take minutes or otherwise record the work sessions in violation of section 551.021. However, according to Corder, the Board is now taking minutes of the work sessions; thus, the record also shows the Board has corrected the deficiency. Under these circumstances, we conclude a permanent injunction serves no useful purpose. *See Tex. State Bd. of Public Accountancy v. Bass*, 366 S.W.3d 751, 765 (Tex. App.—Austin 2012, no pet.) (vacating permanent injunction because no evidence of ongoing or prospective conduct supporting need for same). Finally, we note nothing in the record shows Legacy established the existence of imminent harm, the existence of irreparable injury, and the absence of an adequate remedy at law. *See City of Fort Worth v. Groves*, 746 S.W.2d 907, 913 (Tex. App.—Fort Worth 1988, no writ) (permanent injunction on TOMA violations inappropriate in light of "lack of demonstrated probable irreparable injury").

In light of this, we conclude the trial court abused its discretion by issuing a permanent injunction regarding the taking of minutes or recording work sessions.

With respect to the remaining three violations, we have reviewed the record and conclude there is no evidence to support the trial court's findings. Regarding the finding the Board did not "formally convene its work session," section 551.101 provides a closed meeting may be held only after a "governmental body first convenes in an open meeting." TEX. GOV'T CODE ANN. § 551.101. "Convene" is not defined in TOMA; the common or plain meaning of convene is to come together, to meet, or to assemble. WEBSTER'S 3RD NEW INT'L DICTIONARY 497 (1993). Nothing in TOMA mandates a particular manner in which to convene meetings nor does the trial court's order set out any particular method of convening a meeting. In light of this, we cannot conclude the Board violated TOMA by failing to "formally convene its work session." As for the finding the Board did not identify the TOMA sections at the conclusion of its work session, Legacy acknowledged in its brief that "Houseman apparently stated the statutory exception" for the closed executive session.

Finally, with respect to the finding the Board did not properly meet in closed session under section 551.071(2), the record shows Houseman and current Board chairman Edward Moore testified the Board held a brief executive session following the work session to seek confidential legal advice from the City Attorney. The advice sought concerned two of the cases under consideration that day (one of which was the permit for the multi-level parking garage) and included "what actions [the Board] could take and what the responsibilities of the Board were in connection with the appeal of a decision of a building official." The evidence established that the merits of the cases were not discussed, no votes were taken, and no motions or documents were drafted during the executive session. Houseman and Moore said they were the only Board members who asked questions of the attorney, and no one else spoke. Contrary

–9–

to the trial court's finding, this evidence shows the Board properly met in closed session under section 551.071(2). See Tex. Att'y Gen. Op. No. JC-0233 (2000) (subsection 2 incorporates attorney-client privilege); *Tex. State Bd. of Public Accountancy*, 366 S.W.3d at 759. Because there is no evidence to support the trial court's finding of the remaining three TOMA violations, we conclude the trial court abused its discretion by issuing a permanent injunction. We sustain the Board's second issue.

In its final issue, the Board contends the trial court erred by awarding Legacy attorney's fees and costs incurred by litigating its allegations of TOMA violations. Section 551.142 provides that the trial court, in its discretion, "may assess costs of litigation and reasonable attorney fees incurred" by a party who "substantially prevails" when bringing an action by injunction to stop, prevent, or reverse a TOMA violation. TEX. GOV'T CODE ANN. § 551.142(a), (b). Because we have concluded the trial court abused its discretion by granting the permanent injunction, it follows that Legacy has not "substantially prevailed" in its TOMA claims. We sustain the Board's third issue.

We reverse the trial court's judgment and render judgment reinstating the Board's order.


131128F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE BOARD OF ADJUSTMENT OF THE CITY OF UNIVERSITY PARK, TEXAS, Appellant

No. 05-13-01128-CV          V.

LEGACY HILLCREST INVESTMENTS, LP, Appellee

On Appeal from the 191st Judicial District Court, Dallas County, Texas
Trial Court Cause No. 11-15353.
Opinion delivered by Justice Francis, Justice Myers and Chief Justice Thomas, Ret., participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's judgment and **RENDER** judgment reinstating the decision of the Board of Adjustment of the City of University Park, Texas.

It is **ORDERED** that appellant THE BOARD OF ADJUSTMENT OF THE CITY OF UNIVERSITY PARK, TEXAS recover its costs of this appeal from appellee LEGACY HILLCREST INVESTMENTS, LP.

Judgment entered this 8th day of December, 2014.